## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE
COMMISSION,
100 F Street, N.E.
Washington, D.C. 20549,

                    **Plaintiff,**

            **v.**

CITIGROUP INC.,

                    **Defendant.**

Civil Action No. 10-cv-1277-ESH

## MEMORANDUM OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION IN
## SUPPORT OF ENTRY OF THE PROPOSED CONSENT JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

BACKGROUND ........................................................................................................................2

    A.   The Complaint ...............................................................................................2

    B.   The Proposed Judgment ...............................................................................3

ARGUMENT ............................................................................................................................4

    A.   The Standard Governing Judicial Review of Proposed Commission
          Settlements Is Whether the Proposed Settlement Is Fair, Adequate
          and Reasonable ...............................................................................................4

    B.   The Commission's Proposed Settlement with Citigroup Is Fair, Reasonable,
          Adequate and Should Be Approved ...............................................................7

          1.   The $75 Million Penalty Sought in the Proposed Consent Judgment
               Is Fair, Reasonable and Will Serve the Public Interest ...............................9

          2.   The Permanent Injunction Sought in the Proposed Consent Judgment
               Is Fair, Reasonable and Will Serve the Public Interest ...........................10

CONCLUSION .........................................................................................................................11

## TABLE OF AUTHORITIES

### CASES

*Citizens for a Better Environment v. Gorsuch*, 718 F.2d 1117 (D.C. Cir. 1983) ............. 5

*SEC v. Aminex Resources Corp.*, No. 77-0493, 1977 WL 1038
    (D.D.C. Sept. 12, 1977) ................................................................. 11

*SEC v. Banc of America Securities, LLC*, Civ. A. No. 09-5170, SEC Rel. No.
    21066 (S.D.N.Y. June 9, 2009) ........................................................ 6

*SEC v. Bank of America Corp.*, Nos. 09 Civ. 6829 (JSR), 10 Civ. 0215 (JSR),
    2010 WL 624581 (S.D.N.Y. Feb. 22, 2010) ..................................... 5, 6, 9

*SEC v. Bank of America Corp.*, Nos. 09 Civ. 6829 (JSR), 2009 WL 2842940
    (S.D.N.Y Aug. 25, 2009) ................................................................. 5

*SEC v. Bear Sterns & Co., Inc.*, No. 03 Civ. 2937 (WHP), 2003 WL 22466156
    (S.D.N.Y. Oct. 31, 2003) ................................................................. 5

*SEC v. Citigroup Global Markets, Inc.*, Civ. A. No. 08-10753, SEC Rel. No. 2824
    (S.D.N.Y. Dec. 12, 2008) ................................................................. 6

*SEC v Clifton*, 700 F.2d 744 (D.C. Cir. 1983) ........................................... 4, 11

*SEC v. Randolph*, 736 F.2d 525 (9th Cir. 1984) ........................................... 5

*SEC v. Stratton Oakmont, Inc.*, 878 F. Supp. 250 (D.D.C. 1995) ................... 11

*SEC v. Wachovia Corp.*, Civ. A. No. 04-1911, SEC Rel. No. 2004-152 (D.D.C.
    Nov. 4, 2004) ................................................................................. 9

*SEC v. Wachovia Securities LLC*, Civ. A. No. 09-CV-743, SEC Rel. No. 20885
    (N.D. Ill. Feb. 17, 2009) ................................................................. 6

*SEC v. Worldcom, Inc.*, 273 F. Supp. 2d 431 (S.D.N.Y. 2003) ................... 5, 6, 7

*Swift & Co. v. United States*, 276 U.S. 311 (1928) ..................................... 4

*United States v. Armour & Co.*, 402 U.S. 673 (1971) ................................. 4

*United States v. Trucking Emp., Inc.*, 561 F.2d 313 (D.C. Cir. 1977) .............. 5

## FEDERAL STATUTES AND RULES

Section 17(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77q(a)(2) ...........................1, 4

Section 20(d)(2) of the Securities Act of 1933, 15 U.S.C. § 77t(d)(2)...............................3

Section 13(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78m(a).........1, 2, 4, 10

Section 21(d)(3) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(d)(3)..............3

Section 302 of the Sarbanes-Oxley Act of 2002, 15 U.S.C. § 7241 ................................3

Rule 12b-20, 17 C.F.R. § 240.12b-20 ....................................................1, 2, 4, 10

Rule 13a-11, 17 C.F.R. § 240.13a-11 .....................................................1, 2, 4, 10

Commission's Rules of Practice, 17 C.F.R. § 202.5(e).......................................................3

## OTHER REFERENCES

*Statement of the Securities and Exchange Commission Concerning Financial Penalties,*
SEC Rel. No. 2006-004 (Jan. 4, 2006) ...................................................................................6

*Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934*
*and Commission Statement on the Relationship of Cooperation to Enforcement Decisions,*
SEC Rel. No. 44969 (Oct. 23, 2001) ................................................................................6, 7

*Consent Decrees in Judicial or Administrative Proceedings,* Securities Act Rel. No.
33-5337 (Nov. 28, 1972) .......................................................................................................3

## **INTRODUCTION**

The Securities and Exchange Commission ("Commission" or "SEC") respectfully submits this memorandum in support of the entry of the consent judgment proposed by the parties.

The relief contemplated by the proposed consent judgment is fair, reasonable, adequate and in the public interest. On July 29, 2010, the Commission filed a complaint ("Complaint") alleging that defendant Citigroup Inc. ("Citigroup") violated Section 17(a)(2) of the Securities Act of 1933 ("Securities Act"), Section 13(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Exchange Act Rules 12b-20 and 13a-11. The Complaint alleges that in the summer and fall of 2007, Citigroup repeatedly made misleading statements concerning the extent of the company's exposure to sub-prime mortgage-related assets in earnings calls and public filings. The Complaint and proposed consent judgment were filed after the development of an extensive investigative record and following a series of discussions and negotiations among counsel for the parties. The proposed consent judgment has been approved both by the Commission and Citigroup's Board of Directors. The proposed judgment orders Citigroup to pay a civil penalty of $75 million and contemplates the establishment of a fair fund to distribute the payment to harmed Citigroup shareholders subject to the Court's approval. In addition, it enjoins Citigroup from violating the provisions of the federal securities laws that it is alleged to have violated.

On the same day the Commission filed this action against Citigroup, it instituted administrative proceedings against Citigroup's former Chief Financial Officer, Gary Crittenden, and Citigroup's former head of Investor Relations, Arthur Tildesley, for their roles in causing Citigroup to make certain of the misleading statements alleged in the Complaint. In their offers

1

of settlement related to these proceedings, Messrs. Crittenden and Tildesley consented to the

entry of a cease-and-desist order charging them with causing violations of Section 13(a) of the

Exchange Act and Exchange Act Rules 13a-11 and 12b-20.  In addition, Mr. Crittenden agreed

to an undertaking to pay $100,000 and Mr. Tildesley agreed to an undertaking to pay $80,000 for

submission to the United States Treasury.

   For the reasons set forth below, the proposed consent judgment should be approved.  The

claims brought by the Commission against Citigroup, Mr. Crittenden and Mr. Tildesley comport

with the facts as applied against the appropriate legal standard.  In particular, the $75 million

penalty contemplated by the proposed settlement takes account of the seriousness of Citigroup's

alleged misconduct, principles of specific and general deterrence, and prior precedent in

corporate disclosure cases, while giving fair consideration to the interests of shareholders and the

public.

## BACKGROUND

### A.   The Complaint

   In the Complaint, the Commission alleges that Citigroup made a series of material

misstatements concerning its investment bank's exposure to sub-prime mortgages.  The

Complaint describes the breakdown in communications within Citigroup in the summer and fall

of 2007 that led to the misleading disclosures.  Specifically, the Commission alleges that

between July 20, 2007 and November 4, 2007, Citigroup made a series of statements in public

filings and investor calls in which it represented that it had reduced its investment bank's sub-

prime exposure from $24 billion at the end of 2006 to $13 billion or less, when in fact, at all

times during that period, the investment bank's sub-prime exposure was over $50 billion.

According to the Complaint, in addition to the approximately $13 billion in disclosed sub-prime

2

exposure, the investment bank's sub-prime exposure included more than $39 billion of "super senior" tranches of sub-prime collateralized debt obligations and related instruments called "liquidity puts." The Commission alleges that Citigroup knew or should have known that it was misstating or omitting to state material information about its investment bank's sub-prime exposure. The Commission further alleges that throughout the time Citigroup was making misstatements in public filings and investor calls concerning its investment bank's exposure to sub-prime, it was offering and selling billions of dollars of stocks, bonds and other securities.

## B.   The Proposed Judgment

On July 28, 2010, the Commission filed the Complaint and the Consent of Citigroup to entry of the proposed consent judgment.[1] The judgment, if entered, will resolve the Commission's claims against Citigroup. Under the proposed judgment, Citigroup is required to pay $1 in disgorgement and a $75 million penalty pursuant to Section 20(d)(2) of the Securities Act and Section 21(d)(3) of the Exchange Act. The judgment directs Citigroup to pay the $75 million penalty into an interest-bearing account with the Court Registry Investment System (CRIS) or other type of interest bearing account that is utilized by the Court, and contemplates the distribution of the funds pursuant to a fair fund. In particular, the proposed judgment provides that the Commission may "propose a plan to distribute the Fund subject to the Court's approval" and "pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002." Dkt. #2, Exh. A at 3-4. Accordingly, distribution of the funds is subject to further order of the Court. It is the Commission's intention, at the appropriate time, to submit a plan to

---

[1] The Commission did not require Citigroup to admit liability in conjunction with the settlement because the Commission has a longstanding policy of settling cases on the basis of neither requiring an admission nor permitting a denial by the defendant. Since 1972, Commission settlement documents have routinely included language that provides that the defendant neither admits nor denies the allegations of the Commission's complaint. *See Consent Decrees in Judicial or Administrative Proceedings*, Securities Act Rel. No. 33-5337 (Nov. 28, 1972). The policy is codified in the Commission's Rules of Practice. *See* 17 C.F.R. § 202.5(e).

the Court intended to distribute the funds to shareholders of Citigroup harmed by the company's misstatements.  The judgment also provides that costs associated with distributing the money paid in disgorgement and penalty shall be paid separately by Citigroup, and shall not be paid out of the $75,00,001 Citigroup has agreed to pay pursuant to the judgment.  Additionally, the proposed judgment permanently enjoins Citigroup from violating the Section17(a)(2) of the Securities Act, Section 13(a) of the Exchange Act and Exchange Act Rules 13a-11 and 12b-20.

**ARGUMENT**

A.    **The Standard Governing Judicial Review of Proposed Commission Settlements Is Whether the Proposed Settlement Is Fair, Adequate and Reasonable.**

The use and entry of consent judgments has been endorsed by the Supreme Court. *See e.g.*, *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971); S*wift & Co. v. United States*, 276 U.S. 311, 324-327 (1928).  The United States Court of Appeals for the District of Columbia Circuit has recognized that consent judgments are important to the Commission's ability to enforce the securities laws effectively and efficiently.  In *SEC v Clifton*, 700 F.2d 744, 748 (D.C. Cir. 1983), the Court noted that "[b]ecause of its limited resources, the SEC has traditionally entered consent decrees to settle most of its injunctive actions" allowing the SEC to "conserve its own and judicial resources."  Indeed, settlements are an important part of the Commission's enforcement program.  They allow the Commission to use its resources in an efficient manner to maximize results.  During the past three years, at least 75 percent of the Commission's enforcement actions resulted in settlements prior to the time they were filed in court.

The standard for judicial review and approval of proposed consent judgments in Commission enforcement actions is well-established.  Because actions brought by the Commission seek to enforce the federal securities laws, they should serve "the public interest."

4

*SEC v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984), *see also United States v. Trucking Emp.,*
*Inc.*, 561 F.2d 313, 317 (D.C. Cir. 1977) ("prior to approving a consent decree a court must
satisfy itself of the settlement's overall fairness to beneficiaries and consistency with the public
interest") (citations and internal quotations omitted).   To ensure that the public interest is served,
the court "need not inquire into the precise legal rights of the parties nor reach and resolve the
merits of the claims or controversy, but need only determine that the settlement is fair, adequate,
reasonable and appropriate under the particular facts and that there has been valid consent by the
parties." *Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983) (citations
omitted); *see also SEC v. Bank of America Corp.*, No. 09-CV-6829 (JSR), 2009 WL 2842940, at
*1 (S.D.N.Y. Aug. 25, 2009) (finding that the court should ascertain whether a proposed consent
judgment is "within the bounds of fairness, reasonableness and adequacy – and, in certain
circumstances, whether it serves the public interest").

      Applying this standard, courts have held that where a settling party is a public agency,
like the Commission, the agency's "determinations as to why and to what degree the settlement
advances the public interest are entitled to substantial deference." *SEC v. Worldcom, Inc.*, 273 F.
Supp. 2d 431, 436 (S.D.N.Y. 2003), *see also SEC v. Randolph*, 736 F.2d at 529-30. Indeed, "the
law requires the Court to give substantial deference to the SEC as the regulatory body having
primary responsibility for policing the securities markets, especially with respect to matters of
transparency." *SEC v. Bank of America Corp.*, Nos. 09 Civ. 6829 (JSR), 10 Civ. 0215 (JSR),
2010 WL 624581, at *6 (S.D.N.Y. Feb. 22, 2010). The Commission is "presumed to represent
the interests of the investing public aggressively and adequately." *SEC v. Bear Sterns & Co.,*
*Inc.*, No. 03 Civ. 2937 (WHP), 2003 WL 22466156, at *1 (S.D.N.Y. Oct. 31, 2003). The
standard of review of settlements in Commission actions is the same regardless of the relief

contemplated by the proposed settlement. *See e.g.*, *Bank of America*, 2010 WL 624581, at \*6

(considering and approving a settlement proposing a $150 million penalty and finding that "the

Court would fail in its duty if it did not give considerable weight to the SEC's position");

*Worldcom*, 273 F. Supp. 2d at 436 (applying the "fair, reasonable, and adequate" standard to

SEC settlement proposing $500 million penalty in case involving "perhaps the largest accounting

fraud in history").[2]

      In assessing the reasonableness of a Commission settlement that includes a proposed

penalty, a court should be satisfied that the penalty reflects an adequate consideration of relevant

penalty factors. *See Worldcom*, 273 F. Supp. 2d at 434-436.   In *Statement of the Securities and*

*Exchange Commission Concerning Financial Penalties* ("Penalty Statement"), SEC Rel. No.

2006-04 (Jan. 4, 2006), the Commission identified the following nine factors relevant to the

assessment of whether to impose penalties against a corporation and, if so, in what amount: (i)

corporate benefits from the violation; (ii) impact on injured investors and current shareholders;

(iii) need for deterrence; (iv) pervasiveness of the conduct; (v) degree of scienter; (vi) extent of

the harm to investors; (vii) difficulty of detecting the violations; (viii) voluntary remedial

measures; and (ix) extent of the cooperation, if any, with the Commission and other law

enforcement agencies. *See also Report of Investigation Pursuant to Section 21(a) of the*

---

[2] Citigroup's receipt of funds under the Troubled Asset Relief Program ("TARP") also does not give rise to a different standard of review of the proposed consent judgment.  Several courts have recently approved settlements in SEC cases providing for substantial monetary relief against recipients of TARP funds without holding a hearing or suggesting that a stricter standard applied. *See, e.g.*, *Bank of America*, 2010 WL 624581, at \*6 (approving consent judgment requiring recipient of TARP funds to pay $150 million penalty), *SEC v. Banc of America Securities LLC*, Civ. A. No. 09-5170, SEC Rel. No. 21066 (S.D.N.Y. June 9, 2009) (consent decree entered requiring recipient of TARP funds to redeem billions of dollars worth of auction rate securities from investors); *SEC v. Wachovia Securities LLC*, Civ. A. No. 09-CV-743, SEC Rel. 20885 (N.D. Ill. Feb. 17, 2009) (same); *SEC v. Citigroup Global Markets, Inc.*, Civ. A. No. 08-10753, SEC Rel. No. 2824 (S.D.N.Y. Dec. 12, 2008) (same).

*Securities Exchange Act of 1934 and Commission Statement on the Relationship of Cooperation to Agency Enforcement Decisions*, SEC Rel. No. 44969 (Oct. 23, 2001).

When applying the penalty factors to a specific case, the Commission attempts to assess the extent of the sanction that will best serve the interests of investors and the public while maintaining consistency with penalty amounts previously imposed in similar cases. In certain cases, some factors carry more weight than others. Courts typically consider similar factors, including the need for punishment and deterrence, the magnitude of the violations, and the degree to which the proposed penalty is consistent with penalties imposed in comparable cases. *See Worldcom*, 273 F. Supp. 2d at 434, 435-436 (finding that "the Commission has wisely chosen, in formulating a penalty proposal in this case, to look to the penalties it has imposed in prior cases and the factors there considered" and that "the Court is satisfied that the Commission has carefully reviewed all relevant considerations and has arrived at a penalty that [takes] . . . adequate account of the magnitude of the fraud and the need for punishment and deterrence").

**B.      The Commission's Proposed Settlement With Citigroup Is Fair, Reasonable, Adequate and Should Be Approved.**

The Commission believes that the proposed settlement in this case reflects an appropriate balance of the relevant penalty factors and represents a fair and reasonable resolution of the Commission's action against Citigroup for the misstatements alleged in the Complaint. Prior to filing this action, the Commission's staff conducted an extensive investigation that took place over two years. During the investigation, the staff took the testimony of fourteen individuals and obtained and examined millions of pages of documents. The claims filed against Citigroup, as outlined in detail in the Complaint, are consistent with the investigative record and the applicable legal standards.

7

The Commission alleges that Citigroup made a series of misleading disclosures about its sub-prime exposure during a time of heightened investor and analyst interest in public company exposure to sub-prime mortgages. Specifically, the Commission's Complaint states that during the summer and fall of 2007 "Citigroup represented that it had reduced its investment bank's sub-prime exposure from $24 billion at the end of 2006 to $13 billion or slightly less than that amount. In fact, however, in addition to the approximately $13 billion in disclosed sub-prime exposure, the investment bank's sub-prime exposure included more than $39 billion in sub-prime from super senior tranches of sub-prime collateralized debt obligations and related instruments called "liquidity puts" and thus exceeded $50 billion." Dkt. #1, ¶ 1. The Complaint alleges that certain Citigroup internal documents provided to Citigroup's senior management and Investment Relations personnel showed that the investment bank had substantially more than $13 billion in sub-prime exposure, and that the company's public disclosures were inconsistent with these internal documents and materially understated the company's exposure to sub-prime assets.

In the Complaint, the Commission also alleges that throughout the time Citigroup was making misstatements in public filings and investor calls concerning its investment bank's sub-prime exposure, it had registered, and was offering and selling billions of dollars of stock bonds and other securities. For example, the Commission claims that Citigroup's October 1, 2007 Form 8-K, which was filed with the Commission, contained misleading information about the company's sub-prime exposure and was incorporated by reference into certain registration statements for Citigroup securities offerings. The Commission further alleges that the information that Citigroup misstated or omitted to state concerning its investment bank's sub-prime exposure was material to the investing public.

8

1.    **The $75 Million Penalty Sought in the Proposed Consent Judgment Is Fair, Reasonable and Will Serve the Public Interest.**

The $75 million penalty provision in the proposed judgment is fair, reasonable and appropriate. The Commission has endeavored to propose a monetary penalty that serves the best interests of investors and the public. Although it is difficult to quantify the benefit that Citigroup received by concealing its sub-prime exposure, or the precise harm to shareholders, in developing the proposed $75 million penalty, the Commission considered an economic analysis of the widespread impact of Citigroup's alleged misrepresentations concerning its sub-prime exposure on shareholders and the approximate benefit to the company. The proposed judgment contemplates the establishment of a fair fund to distribute the entire $75 million penalty to shareholders harmed by the alleged disclosure violations. In addition, the proposed settlement is reasonably consistent with comparable prior precedent. For example, in *Bank of America Corp.*, 2010 WL 624581, at *6, the court approved a settlement that required Bank of America to pay a penalty of $150 million to be distributed to harmed shareholders in connection with proxy disclosure violations related to the company's merger with Merrill Lynch. Similarly, in *SEC v. Wachovia Corp.*, Civ. A. No. 04-1911, SEC Rel. No. 2004-152 (D.D.C. Nov. 4, 2004), the court approved a settlement that imposed a $37 million penalty on Wachovia for its violations of both the proxy rules and corporate reporting provisions.

In addition to being reasonably comparable to penalties imposed in prior disclosure cases involving financial institutions, the $75 million penalty contemplated by the proposed settlement also takes into account the seriousness of the misconduct alleged in the Commission's Complaint, and the need for deterrence, while giving due consideration to the interests of innocent Citigroup shareholders. Citigroup currently has more than 29 billion shares of stock. Citigroup securities are some of the most widely traded securities in the world. The proposed

9

$75 million penalty represents less than 0.3% of the company's revenue for the most recent

quarter, and should not cause an undue negative financial impact on the company's business, or

significant harm to current Citigroup shareholders. At the same time, the amount of the penalty

is sufficiently substantial to send a clear message of the seriousness of the company's disclosure

failures and that misleading statements by a corporation on issues of importance to investors

cannot go unchecked. Moreover, the proposed penalty and contemplated fair fund distribution

could provide substantial relief to shareholders harmed by misrepresentations Citigroup made

concerning its investment bank's sub-prime exposure.

The fairness and reasonableness of the proposed settlement also is underscored by the

cease-and-desist proceedings the Commission filed against Citigroup's former Chief Financial

Officer, Gary Crittenden, and former head of Investor Relations, Arthur Tildesley. The

Commission instituted the proceedings against Mr. Crittenden and Mr. Tildesley on the same day

it filed the Complaint in this action. In the proceedings, the Commission charged Mr. Crittenden

and Mr. Tildesley for their roles in causing Citigroup to violate Section 13(a) of the Exchange

Act and Exchange Act Rules 12b-20 and 13a-11. In settlement offers to the Commission, Mr.

Crittenden agreed to an undertaking requiring him to pay $100,000 and Mr. Tildesley agreed to

an undertaking requiring him to pay $80,000. In addition to the claims asserted in this action

against Citigroup, by instituting the cease-and-desist proceedings against Mr. Crittenden and Mr.

Tildesley, the Commission also held corporate executives who contributed to Citigroup's

disclosure violations responsible for their actions.

**2.     The Permanent Injunction Sought in the Proposed Consent Judgment
Is Fair, Reasonable and Will Serve the Public Interest.**

Based on the detailed facts set forth in the Complaint concerning Citigroup's alleged

disclosure violations, it also is in the public interest to permanently enjoin Citigroup from

10

violating the federal securities laws it is alleged to have violated. Permanent injunctions, like the

injunction provided for in the proposed consent judgment, have been found by courts in this

jurisdiction to "protect the public by informing potential investors that a certain person [or

company] has violated SEC rules in the past and by reminding defendants that they must obey

the law in the future." *SEC v. Clifton*, 700 F. 2d at 748, *see also SEC v. Stratton Oakmont, Inc.*,

878 F. Supp. 250, 251 (D.D.C. 1995) (finding that "standards of public interest . . . measure the

propriety and need for injunctive relief") (citations and internal quotations omitted); *SEC v.*

*Aminex Resources Corp.*, No. 77-0493, 1977 WL 1038, at * 1 (D.D.C. Sept. 12, 1977) ("The

purpose of injunctive relief in a case of this nature is to protect the public from future

violations"). The injunction sought in the Commission's settlement with Citigroup is fair,

reasonable, and will serve the public interest by deterring disclosure violations in the future, not

only by Citigroup, but also by other public companies.

## CONCLUSION

For the foregoing reasons, the Commission respectfully requests that the Court enter the

proposed final consent judgment.

Respectfully submitted,

/s/ Erica Y. Williams
Erica Y. Williams (464518)
Scott W. Friestad
Laura B. Josephs (414519)
Thomas D. Silverstein (256362)
Andrew H. Feller (485316)
Attorneys for Plaintiff
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
Telephone: (202) 551-4450 (Williams)
Facsimile: (202) 772-9246 (Williams)

Dated: August 13, 2010

11

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2010, I sent a copy of the forgoing Memorandum Of Plaintiff Securities and Exchange Commission In Support Of Entry Of The Proposed Consent Judgment, which was filed through the ECF system, to the following counsel via electronic mail and overnight courier:

Lawrence B. Pedowitz
Jonathan M. Moses
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, New York 10019

Mark F. Pomerantz
Brad S. Karp
Susanna M. Buergel
Paul, Weiss, Rifkind, Wharton & Garrison, LLP
1285 Avenue of the Americas
New York, New York 10019

/s/ Erica Y. Williams